IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRIAN BACCHUS,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: RWT 10cv1684 |
| **SOUTHEASTERN MECHANICAL SERVICES, INC.,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Defendant Southeastern Mechanical Services, Inc. ("SMS") moves for summary judgment as to the entirety of Plaintiff Brian Bacchus's ("Bacchus") Complaint. For the reasons set forth below, the Court will grant SMS's motion.

## FACTS

Bacchus, an African-American male, alleges that SMS discriminated against him on the basis of his race when SMS did not select him for a vacant welder position for which he applied. Bacchus and SMS relate two very different stories regarding the events surrounding Bacchus's application for the welder position. The following provides a brief background of the parties involved and details the disputed events surrounding Bacchus's application to be hired as a welder by SMS.

SMS is a general and mechanical construction and maintenance contractor headquartered in St. Petersburg, Florida. Def.'s Mot. for Summ. J., Ex. 1, Decl. of Greg Farley, at ¶ 3. SMS provides services to companies involved in the electric, waste-to-energy, food process, biomass,

and pulp and paper industries. *Id.* SMS employees work throughout the country at various job sites on an as-needed basis. *Id.* at ¶¶ 4-5.

In the spring of 2009, SMS contracted with the Mirant Dickerson power plant in Dickerson, Maryland to complete a project that involved the replacement of tubes for large capacity boilers ("Dickerson Project"). *Id.* at ¶ 13. To complete the Dickerson Project, SMS sought to hire additional pipe and tube welders. *Id.*

SMS required that all welding applicants take a two-part skills test to be eligible for hire. *Id.* at ¶¶ 14-15. The first part of the test, known as the "heavy wall weld test" ("weld test"), was performed by each applicant individually. *Id.* at ¶ 17. An applicant needed to pass this first part of the test to be eligible for a pipe welder position; eligibility for a tube welder position required the successful completion of both parts of the two-part test. *Id.*

To pass the weld test, an applicant had to successfully weld together two pieces of metal, called coupons, within three hours. Def.'s Mot. for Summ. J., Ex. 10, Decl. of Daniel Horst, at ¶ 5; Ex. 12, Myers Dep. 38:15-16. The applicant's welded piece was then inspected by the quality control inspector and/or the project superintendent to determine whether the applicant possessed the requisite welding skills for the Dickerson Project. *Id.*, Ex. 10 at ¶ 5.

In March of 2009, Theodore Grange, Bacchus's cousin, was told by Donald Williams, Jr., one of SMS's employees, that SMS was hiring for welder positions. *Id.*, Ex. 16, Decl. of Donald Williams, Jr., at ¶ 7. Williams also recommended Grange to Steve Brickhouse, the night shift superintendent for the Dickerson Project. *Id.*, Ex. 11, Decl. of Steve Brickhouse, at ¶ 4. Grange then told Bacchus about the vacant welder positions, and on March 30, 2009, the two traveled to the Dickerson Project job site to apply. *Id.*, Ex. 4, Bacchus Dep. 287:20-25, 288:1-4. Bacchus

was subsequently paid per diem for his time at the plant. *Id.*, Ex. 8, Decl. of Russell Davidson, at ¶ 11.

At this point, the parties' renditions of the facts diverge. Bacchus claims that he went to the Dickerson Project site on March 30, 2009 to apply for a welder position, but an SMS representative instructed him to return the next day to take the welding test because the person administering the test was not available that day. Pl's Compl. ¶ 5, ECF No. 1. Bacchus further asserts that Andy Myers, SMS's quality control inspector, told him that he could practice for four hours on SMS's welding equipment if he wished. *Id.* ¶ 6. Bacchus claims he did so, and then returned the next day expecting to take the welding test. *Id.* ¶ 8. According to Bacchus, he filled out the employment application and was then informed by Myers that he had failed the welding test. *Id.* ¶¶ 8, 10. Myers refused to allow him to take the test and Bacchus was escorted out of the plant. *Id.* ¶ 10. Bacchus further asserts that two white males were permitted to take the test with materials that were easier to weld than the materials that he had practiced with the day before. *Id.* ¶ 9. Bacchus also claims that Brickhouse, the night shift superintendent, referred to him as a "nigger." *Id.* ¶ 14.

SMS denies that these events took place and asserts that Myers gave Bacchus the welding test on March 30th, along with Grange and four other candidates. Def.'s Mot. for Summ. J., Ex. 12, Myers Dep. 34:1-8. Before the test began, Myers gave Bacchus pieces of scrap metal with which to set up and adjust his welding gun. *Id.* at 37:3-8. Myers asserts that he had to assist Bacchus with setting up the welding gun. *Id.* at 47:6-25. Myers then passed out the testing coupons and the test began at about 9:00 p.m. *Id.* at 43:5-8. Three hours later, when the time allotted for the test was up, Bacchus and Grange said they thought they were "still practicing." *Id.* at 53:3-13. Myers told them that the test had started three hours ago and instructed them to

complete the test. *Id.* at 53:10-13. Around 3:00 a.m., Brickhouse instructed Bacchus and Grange to hurry up and finish their tests. *Id.* at 56:16-23. Grange admits he heard Brickhouse say this, Def.'s Mot. for Summ. J., Ex. 15, Grange Dep. 88:15-17, though Bacchus claims he did not hear these instructions, *id.*, Ex. 4, Bacchus Dep. 126:1-25.

Bacchus continued to work on his test coupons until 6:00 a.m. *Id.*, Ex. 12, Myers Dep. 59:1-8. At that point, Myers brought Bacchus's test coupons to Brian Jenkins, the day shift quality control supervisor, to perform the final visual inspection. *Id.*, Ex. 9, Jenkins Dep. 12:22-25, 13:1-9. Jenkins determined that Bacchus's unfinished coupon demonstrated that he did not have the requisite skills to perform the boiler welding that the Dickerson Project required. *Id.* at 9:20-25, 10:1-4. It is undisputed that when Bacchus finished the weld test, he had yet to complete a single weld and had been welding for much longer than the allotted three hours.[1] *Id.*, Ex. 4, Bacchus Dep. 127:9-16.

Jenkins testified that he did not know Bacchus's race when he evaluated his coupons. *Id.*, Ex. 9, Jenkins Dep. 13:10-19. Bacchus has not disputed this claim and agrees that he had no contact with Jenkins throughout his application process. *Id.*, Ex. 4, Bacchus Dep. 128:4-24. Contrary to the allegations in his Complaint, Bacchus admitted at his deposition that he has no personal knowledge or other evidence that any white applicant took an easier test than he did on March 31st. *Id.* at 228:6-10, 238:5-239:23. He also conceded that, notwithstanding the averment in paragraph 14 of his Complaint, he did not hear any racist words spoken while at SMS's job site. *Id.* at 388:1-15.

The undisputed facts show that Bacchus twice misrepresented his welding experience. First, on his employment application, Bacchus wrote that he had completed a two-year welding

---

[1] Bacchus claims his coupons were 80% complete, Ex. 4, Bacchus Dep. 127:9-16, and Myers believed they were 40-50% complete, Ex. 5, Myers Dep. 58:24-59:10.

4

certificate program at the Tulsa Welding School. *See* Pl.'s Application for Employment, Def.'s Mot. for Summ. J., Ex. 23. However, Bacchus's transcript from that school reveals that he did not move beyond the fifth phase of the program because he twice failed "Basic Pipe Welding." Tulsa Welding School Transcript, Def.'s Mot. for Summ. J., Ex 19. According to an experienced SMS welder, Bacchus could not be expected to pass the first-round weld test because the four courses that he completed did not cover the type of welding that the Dickerson Project required. *Id.*, Ex. 14, Story Dep. 27:23-25, 28:1-9.

Second, in his deposition, Bacchus claimed that his last welding job was with a company called PDI.[2] *Id.*, Ex. 4, Bacchus Dep. 7:1-25. However, employment records show that Bacchus actually worked as an inventory supervisor. Def.'s Mot. for Summ. J., Ex. 21. Bacchus produced no documentation of any welding experience during discovery. *Id.*, Ex. 22.

Bacchus filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 25, 2009. Compl. ¶ 21. Based on the information collected during its own investigation, the EEOC was unable to conclude that any Title VII violation occurred in connection with Bacchus's application for employment with SMS. EEOC Dismissal and Notice of Rights, ECF No. 1, Ex. 1. Bacchus received a right to sue letter of Match 26, 2010. *Id.*

## PROCEDURAL HISTORY

Bacchus, proceeding *pro se*, filed the instant Complaint against SMS on June 23, 2010 alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). Compl. ¶ 1, ECF No. 1. Bacchus seeks three million dollars in damages. *Id.* at 4. On August 10, 2010, the Court issued a Scheduling Order requiring that discovery be completed by

---

[2] Bacchus identifies his previous employer as "PDI," but the relevant employment records indicate that the name of the employer in question is actually "Mystic Display. *See* Def.'s Mot. for Summ. J., Ex. 21.

5

December 23, 2010 and setting January 24, 2011 as the deadline for dispositive pretrial motions. *See* Scheduling Order 1-2, ECF No. 6.

On December 27, 2010, Bacchus filed a Motion for Appointment of Counsel. ECF No. 31. The Court denied Bacchus's motion, determining that the issues at hand were not unduly complex and that Bacchus failed to demonstrate any exceptional circumstances that would warrant the appointment of counsel. *See Bacchus v. Se. Mech. Servs.*, 2011 U.S. Dist. LEXIS 11901, at *1 (D. Md. Feb. 8, 2011). The Court further noted that though Bacchus is proceeding *in forma pauperis*, he had at one point been able to afford an attorney and had retained counsel who later withdrew.[3] *See id.* at *2. Third, Bacchus's Complaint showed that he was able to articulate adequately his claims and litigate them himself. *See id.* at **2-3.

On January 24, 2011, SMS filed a Motion for Summary Judgment. ECF No. 33. Bacchus opposed SMS's motion on February 8, 2011, ECF No. 35, and SMS filed a Reply in support of its Motion for Summary Judgment on February 23, 2011, ECF No. 41. The issues at hand are fully briefed and no hearing is deemed necessary pursuant to Local Rule 105.6.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006); Fed. R. Civ. P. 56. In deciding a summary judgment motion, the Court must ask whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[3] Bacchus's attorney returned the balance of Bacchus's retainer after investigating his claims. *Id.*

Summary judgment is properly granted where a claim rests on mere speculation and conjecture. *Deans v. CSX Trans. Inc.*, 152 F.3d 326, 330 (4th Cir. 1998). "The nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Accordingly, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion" or "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## II. Discrimination under Title VII

Where a plaintiff relies upon indirect evidence to show that an adverse employment decision was motivated by race, the three-step *McDonnell Douglas* framework governs. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, the plaintiff must first establish by a preponderance of the evidence a prima facie case of discrimination. *See id.* When this initial burden is met, the burden of production shifts to the employer, who is required to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* The plaintiff must then prove that the employer's stated reason is in fact pretext for a racially discriminatory reason. *See id.* at 804. A plaintiff may do so by directly persuading the Court that "a discriminatory reason more likely motivated the employer or indirectly by showing that

7

the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

To establish a prima facie case of discriminatory failure to hire, a plaintiff prove: (1) that he is a member of a protected class; (2) that he applied for the position in question; (3) that he was qualified for that position; and (4) that he was rejected under circumstances giving rise to an inference of unlawful discrimination. *See Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998). Here it is undisputed that Bacchus fulfills the first two elements, as he is an African-American male and applied for a vacant welder position. However, because Bacchus has failed to present any evidence of elements three and four, he fails to carry his initial burden of establishing a prima facie case.

**A. Bacchus has Not Proved a Prima Facie Case of Discriminatory Failure to Hire.**

The Fourth Circuit has made clear that a claim that rests on "mere speculation and conjecture" cannot proceed beyond the summary judgment stage, *Deans*, 152 F.3d at 330, because the nonmoving party cannot create a genuine issue through "the building of one inference upon another," *Beale*, 769 F.2d at 214. Accordingly, a plaintiff opposing summary judgment must support his position with "evidence on which a reasonable jury could find for [him]." *Anderson*, 477 U.S. at 252.

In this case, Bacchus does not point to any evidence that would establish the final two elements of a prima facie discrimination case; rather, he purports to fulfill these elements through unsubstantiated and speculative claims. This will not suffice to fulfill his initial burden, and entitles SMS to summary judgment. *See Morrall v. Gates*, 370 Fed. Appx. 396, 397-98 (4th Cir. 2010) (affirming grant of summary judgment to defendant where plaintiff failed to state prima facie case of racial discrimination).

1. <u>Bacchus has not shown he was qualified for the welder position for which he applied.</u>

With respect to the third element of his prima facie case, Bacchus has put forth no evidence showing that he was qualified to work as a welder for the Dickerson Project. Instead, Bacchus merely claims he satisfies this element by stating that he "was a welder for six years when [he] applied for [the] position." Pl.'s Opp'n at 1, ECF No. 35. Nothing in the record corroborates his claimed experience. In fact, discovery revealed that Bacchus misrepresented his welding experience when he applied for a welder position with SMS. First, Bacchus's claim on his employment application that he is a Certified Master Welder was false, as he completed less than half the requisite coursework for this degree. *See* Def.'s Mot. for Summ. J., Ex. 14, Story Dep. 27:23-25, 28:1-9. Second, Bacchus's purported welding experience at his previous job was fabricated, as he actually worked as an inventory supervisor. *See id.*, Ex. 21.

Even assuming that Bacchus did in fact have six years of welding experience when he applied for a position with SMS, this alone would not show that he was qualified to perform the specific welding that the Dickerson Project required. It is undisputed that the job description for the position that Bacchus sought required that applicants "have the ability to . . . weld to ASME code on boiler tubes, piping and structural components and the ability to perform general maintenance on power house boilers." SMS Job Description, Def.'s Mot. for Summ. J., Ex. 17. Bacchus has yet to provide any evidence, and has not even asserted, that he possessed the skills to perform this type of welding. In fact, Bacchus admitted that he had absolutely no welding experience with boilers. *See id.*, Ex. 4, Bacchus Dep. 25:2-7.

Additionally, it is undisputed that Bacchus worked on his test coupons from 9:00 p.m. until 6:00 a.m. the next day and failed to complete a single weld during that time. *Id.*, Ex. 4, Bacchus Dep. 127:9-16; Ex. 12, Myers Dep. 59:1-8. It is also undisputed that Jenkins evaluated

Bacchus's work and determined that he did not have the skills that the SMS welder position required. *Id.*, Ex. 9, Jenkins Dep. at 9:20-25, 10:1-4. Thus, it is clear that Bacchus was not qualified for the position for which he applied because he was unable to complete any of the requisite welds within three hours.

For all of these reasons, Bacchus fails to establish the third element of a prima facie case—that he was qualified for the position for which he applied. Accordingly, SMS is entitled to summary judgment.

> 2. There is no evidence that Bacchus was not hired under circumstances giving rise to an inference of discrimination.

With respect to the fourth element of the prima facie case, Bacchus has failed to show that he was not hired under circumstances giving rise to an inference of discrimination. To carry his burden on this element, Bacchus must present evidence of circumstances surrounding the alleged discriminatory event that "credibly raises an inference of unlawful discrimination." *Ennis v. Nat'l Ass'n of Bus. And Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). Bacchus alleges that three different events give rise to an inference of unlawful discrimination: (1) Brickhouse, the night shift superintendent, used racially derogatory language, Compl. ¶ 14; (2) SMS employees Myers and Jenkins allowed two white males to take an easier welding test on March 31, 2009 than Bacchus had taken on March 30, 2009, Compl. ¶ 9; and (3) Myers told Bacchus that he could "practice" when Bacchus was in fact taking the welding test, Pl.'s Opp'n at 7. Bacchus's own deposition testimony makes clear that none of these alleged events constitutes evidence of discrimination.

First, Bacchus's deposition demonstrates that, at the very least, he has no evidence that these events actually occurred; in fact, his testimony indicates that these allegations were fabricated. Def.'s Mot. for Summ. J., Ex. 4, Bacchus Dep. 228:6-10, 238:1-239:23. As for the

white applicants allegedly given an easier test, Bacchus admitted at his deposition that he had no personal knowledge regarding the tests that these applicants took:

> Q: You agree with me that you don't know what those two gentlemen, the two, as you say, white gentlemen, were given to weld on, do you?
> A: I don't have a clue what they were given.
> Q: . . . You never saw them [the two white applicants] take an easier weld test that day did you?
> A: No.

*Id.* at 228:6-10, 238:18-20. As for the alleged racial slurs, Bacchus conceded at his deposition that he did not hear any racist language during his time at SMS's job site. *Id.* at 388:1-15 ("I never heard—I never heard no racist words whatsoever [at the SMS job site].").

Finally, Bacchus does not make clear how being told he was practicing when he was really being tested raises any inference of discrimination. It is undisputed that SMS employee Jenkins examined the welds that Bacchus worked on and determined that he did not have the skills necessary to perform the type of welding required by the Dickerson Project. *See* Def.'s Mot. for Summ. J., Ex. 9, Jenkins Dep. at 9:20-25, 10:1-4. Bacchus claims in his opposition to SMS's Motion for Summary Judgment that his welds were not of poor quality, s*ee* Pl.'s Opp'n at 7, yet he concedes that he failed to successfully complete a single weld after working on his test coupons for nine hours, Def.'s Mot. for Summ. J., Ex. 4, Bacchus Dep. 127:9-16. He has also conceded that the only difference between "test" welds and his "practice" welds was his knowledge that he was, in fact, being tested. Bacchus Dep. 242:7-23. Accordingly, Bacchus fails to demonstrate how being told that he was practicing, when he was in fact being tested, has any relevance to his claim of discrimination.

For all of these reasons, Bacchus fails to establish the fourth element of a prima facie case—that he was not hired under circumstances giving rise to an inference of discrimination. Accordingly, SMS is entitled to summary judgment on Bacchus's Title VII claim.

### B. Even if Bacchus had proved his prima facie case, SMS proffered a legitimate, nondiscriminatory reason for not hiring him.

Even assuming that Bacchus could prove a prima facie case of discrimination, SMS has proffered a legitimate, nondiscriminatory reason for not hiring him. Specifically, SMS asserts that Bacchus was not hired as a welder because he did not possess the skills necessary to perform the type of welding that the Dickerson Project required. *See* Def.'s Mot. for Summ. J. 26. SMS points to the deposition testimony of Brian Jenkins, the SMS employee who evaluated Bacchus's test coupons, in support. *See id.*, Ex. 9, Jenkins Dep. at 9:20-25, 10:1-4. Jenkins testified:

> "[The test coupon] was not . . . adequate enough for—to pass the test. It was just nasty looking . . . Nothing was—none of the strings or anything were, you know—what I'm looking for. . . [and] they [the welds] were not complete."

*Id.* Accordingly, SMS has proffered a legitimate, nondiscriminatory reason for not hiring Bacchus.

### C. Bacchus has not demonstrated that SMS's articulated reason for not hiring him is pretext.

Bacchus has failed to demonstrate that SMS's articulated reason for not hiring him is pretext for a discriminatory reason. Indeed, Bacchus concedes that he failed to complete any of his test coupons successfully. Def.'s Mot. for Summ. J., Ex. 4, Bacchus Dep. 127:9-16. Furthermore, Bacchus's deposition reveals that his previous claims that an SMS employee used racially derogatory language and allowed white applicants to take easier tests than he took are speculative or false. *See id.* at 228:6-10, 238:1-239:23. Thus, Bacchus has not demonstrated that SMS's stated reason is pretext, and SMS is entitled to summary judgment.

### **CONCLUSION**

In conclusion, Bacchus failed to state a prima facie case of discriminatory failure to hire in violation of Title VII. Furthermore, SMS has articulated a legitimate, nondiscriminatory

reason for not hiring him. Bacchus has failed to demonstrate that this reason is pretext. Accordingly, the Court will grant SMS's Motion for Summary Judgment. A separate order follows.

Date: <u>July 20, 2011</u>                                              <u>          /s/                          </u>
                                                                              ROGER W. TITUS
                                                                   UNITED STATES DISTRICT JUDGE